NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 22-5036 (consolidated with 22-5037)

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

FRIENDS OF THE EARTH ET AL.,
*Plaintiffs/Appellees*,

v.

DEBRA HAALAND,
in her official capacity as Secretary of the Interior, et al.,
*Defendants/Appellees*,

and

AMERICAN PETROLEUM INSTITUTE and STATE OF LOUISIANA,
*Intervenors-Defendants/Appellants.*

---

Appeal from the United States District Court for the District of Columbia
No. 1:21-cv-02317 (Hon. Rudolph Contreras)

---

**FEDERAL DEFENDANTS-APPELLEES' MOTION TO DISMISS**

---

Of Counsel:

NATALIE EADES
*Attorney-Advisor*
Office of the Solicitor,
U.S. Dep't of the Interior

TODD KIM
*Assistant Attorney General*
ROBERT LUNDMAN
LUTHER HAJEK
MICHELLE MELTON
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3251
michelle.melton@usdoj.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A. Parties, Intervenors, and Amici.**

All parties, intervenors, and amici that appeared before the district court are listed in the Brief for Intervenor-Appellant American Petroleum Institute.

All parties, intervenors, and amici appearing in this Court are listed in Federal Appellees' opening brief.

**B. Ruling under Review.**

The rulings under appeal are the district court's January 27, 2022, Opinion (ECF No. 78), available as *Friends of the Earth, et al. v. Haaland, et al.*, 583 F. Supp. 3d ---, 2022 WL 254526 (D.D.C. 2022),.

**C. Related Cases.**

There are no related cases within the meaning of Circuit Rule 28(a)(1)(C).

s/ *Michelle Melton*
MICHELLE MELTON

Counsel for Federal Appellees

i

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ....i

TABLE OF AUTHORITIES ......................................................................iii

INTRODUCTION .................................................................................. 1

BACKGROUND...................................................................................... 3

    A.    Leasing under the Outer Continental Shelf Lands Act ................ 3

    B.    The 2017-2022 Five Year Program, Lease Sale 257, and District Court Proceedings..................................................... 4

    C.    Subsequent Developments .......................................................... 6

ARGUMENT ......................................................................................... 7

I.    The case is moot. ............................................................................ 7

    A.    Because the Inflation Reduction Act removed Interior's discretion respecting the subject leases, Plaintiffs' NEPA claim is moot. ................................................... 9

    B.    The statute's 30-day compliance deadline confirms Congress did not intend for the agency to engage in additional NEPA analysis. ....................................................... 11

    C.    Vacatur is the established practice in these circumstances. ........................................................................... 14

II.    In the alternative, these appeals are moot and should be dismissed....... 16

CONCLUSION...................................................................................... 17

CERTIFICATE OF COMPLIANCE......................................................... 19

# TABLE OF AUTHORITIES[1]

## Cases

*Am. Bar Ass'n v. Federal Trade Comm'n,*
636 F.3d 641 (D.C. Cir. 2011) ..............................................8, 14, 15

*Arkansas v. Gresham,*
142 S.Ct. 1665 (2022) ................................................................ 15

*Bureau of Alcohol, Tobacco, and Firearms v. Galioto,*
477 U.S. 556 (1986) .................................................................. 14

*California v. San Pablo & Tulare R.R. Co.,*
149 U.S. 308 (1893) .................................................................. 11

*Center for Science in the Public Interest v. Regan,*
727 F.2d 1161 (D.C. Cir. 1984) .................................................. 11

*Church of Scientology v. United States,*
506 U.S. 9 (1992) ....................................................................... 7

*City of New York v. Minetta,*
262 F.3d 169 (2d Cir. 2001) ....................................................... 12

*Dep't of Transp. v. Public Citizen,*
541 U.S. 752 (2004) ................................................................... 10

*Diamond v. Charles,*
476 U.S. 54 (1986) .................................................................... 16

*Duke Power Co. v. Greenwood Cty.,*
299 U.S. 259 (1936) .................................................................. 15

*Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Oklahoma,*
426 U.S. 776 (1976) .................................................................. 12

---

[1] Authorities upon which Federal Defendants chiefly rely are indicated with an asterisk.

*Izaak Walton League of America v. Marsh*,
    655 F.2d 346 (D.C. Cir. 1981) ................................................................. 12

*Jamul Action Comm. v. Chaudhuri*,
    837 F.3d 958 (9th Cir. 2016) ................................................................. 12

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) ................................................................................. 8

*Mexicali, A.C. v. United States*,
    482 F.3d 1157 (9th Cir. 2007) ............................................................... 13

*Mobil Oil Corp. v. EPA*,
    35 F.3d 579 (D.C. Cir. 1994) ............................................................11, 17

*Nuclear Energy Inst. v. EPA*,
    373 F.3d 1251 (D.C. Cir. 2004) ............................................................... 8

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
    601 F.3d 1096 (10th Cir. 2010) ............................................................. 15

*State of Nevada v. Watkins*,
    943 F.2d 1080 (9th Cir. 1991) ............................................................11, 16

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'Ship*,
    513 U.S. 18 (1994) ................................................................................. 15

*United Brotherhood of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers'
    & Cement Masons' Int'l Ass'n. of U.S. & Canada, AFL-CIO*,
    721 F.3d 678 (D.C. Cir. 2013) ................................................................. 7

*\*United States v. Microsoft Corp.*,
    138 S.Ct. 1186 (2018) ........................................................................14, 15

*Westlands Water Dist. v. Natural Res. Def. Council*,
    43 F.3d 457 (9th Cir. 1994) ................................................................... 13

## Statutes

42 U.S.C. § 4332 ........................................................................................ 12

iv

43 U.S.C. § 1337(a)(1) ................................................... 3

43 U.S.C. § 1344 ......................................................... 3

Inflation Reduction Act § 50264 ..................................... 1, 6, 8, 13

## Regulations

30 C.F.R. § 556.308 ..................................................... 3

30 C.F.R. § 556.516(b) ................................................ 3, 4

## Other Authorities

86 Fed. Reg. 54,734 (Oct. 4, 2021) ................................. 4

Wright & Miller, *Fed. Prac. and Proc.* § 3092 ................................ 16

Wright & Miller, *Fed. Prac. and Proc.* § 3533.6 ................................ 8

## INTRODUCTION

Plaintiff-Appellees Friends of the Earth, Healthy Gulf, Sierra Club, and Center for Biological Diversity challenged the Department of the Interior's ("Interior") record of decision for Lease Sale 257, a lease sale held pursuant to Interior's 2017-2022 Five Year Program. The district court held that Interior had not complied with the National Environmental Policy Act ("NEPA") prior to holding the sale, and the court vacated Interior's record of decision supporting the sale. Intervenor-Defendants American Petroleum Institute and Louisiana appealed.

On August 16, 2022, the Inflation Reduction Act of 2022, Pub. L. 117-169, became law. That statute directs Interior, "without modification or delay" (and no later than September 15, 2022), to "accept the highest valid bid for each tract or bidding unit of Lease Sale 257 for which a valid bid was received on November 17, 2021," and "provide the appropriate lease form to the winning bidder to execute and return." Inflation Reduction Act § 50264(b)(1). It further requires Interior, once the lease form is returned, to "promptly" issue to each high bidder "a fully executed lease in accordance with" the "terms and conditions" contained in the October 4, 2021, final notice of sale. *Id.* § 50264(b)(2). On September 14, 2022, Interior complied with the Inflation Reduction Act by transmitting lease forms to the highest valid

bidders; upon return of the forms, the Secretary will promptly issue fully executed leases, again in compliance with the statute.

The Inflation Reduction Act moots this case. Interior ordinarily has discretion regarding whether and when to hold lease sales, the terms of the sales, and whether to accept bids and issue leases received in the sales. By directing that certain entities (i.e., the highest valid bidders from Lease Sale 257) receive a property interest on U.S. land (i.e., leases), and prescribing the terms and conditions to which those property interests are subject, however, Congress has prospectively changed existing law as to the tracts at issue in Lease Sale 257. The Inflation Reduction Act withdraws Interior's discretion to do anything other than issue these leases on the terms specified by Congress, irrespective of NEPA. Moreover, even assuming Congress has left Interior some discretion, NEPA yields when an agency cannot comply with both that statute a more specific statutory command—as here, given the 30-day timeline set forth in the Inflation Reduction Act. There is thus no longer any live controversy over whether Lease Sale 257 complied with NEPA. The Court therefore should vacate the judgment of the district court and remand with instructions to dismiss the complaint as moot.

In the alternative, the Court should dismiss these *appeals* as moot. The district court's order no longer injures Intervenor-Appellants American

Petroleum Institute and the State of Louisiana because their stated interests in this case—in the direct and indirect benefits of lease issuance—are now protected by the Inflation Reduction Act, regardless of whether the district court's order remains in effect.

## BACKGROUND

### A.    Leasing under the Outer Continental Shelf Lands Act

As explained in further detail in Federal Appellees' brief, the Outer Continental Shelf Lands Act prescribes a multi-stage process for developing energy resources on the Outer Continental Shelf.

At the first stage, Interior develops a five-year leasing program by selecting possible areas to consider for sale and proposing a schedule of potential lease sales in those identified areas.  *See* 43 U.S.C. § 1344; 30 C.F.R. Part 556, Subpart B.  At the second stage, Interior chooses whether and when to hold the individual lease sales contemplated by the five-year program, including which specific blocks to offer for leasing and the lease stipulations and terms of sale, such as the royalty rate.  *See* 43 U.S.C. § 1337(a)(1); 30 C.F.R. § 556.308.

Interior's regulations set forth a multi-step process for Interior to follow after a lease sale but before issuing leases.  *See* 30 C.F.R. Part 556, Subpart E. First, Interior reviews the bids to determine their validity and adequacy.  30

3

C.F.R. § 556.516(b); *see also First Decl. of Bernadette Thomas*, ECF 19-1. Second, Interior must offer the Attorney General an opportunity to review the bids for antitrust concerns. *Id.* § 556.516(e). Third, Interior may accept the high bids and send prospective lessees a lease, which they must sign and return, along with payment, to Interior. *Id.* § 556.520. Interior then verifies that the lease has been signed by an authorized representative and all payments have been made. Interior then executes the lease, which becomes effective the first day of the month following the date Interior executes the lease. *Id.* § 556.521.

Before Interior accepts bids and issues leases, Interior ordinarily retains discretion to reject bids or withdraw lease blocks. For instance, Interior may reject any bid within 90 days of the sale, or longer, if Interior extends the time period. *Id.* § 556.516(b); 86 Fed. Reg. 54,734 (Oct. 4, 2021). Additionally, Interior has discretion to withdraw any particular block from the lease sale prior to written acceptance of the bid on the block. *See, e.g.*, 86 Fed. Reg. 54,734 (Oct. 4, 2021).

### B.  The 2017-2022 Five Year Program, Lease Sale 257, and District Court Proceedings

In January 2017, Interior approved its 2017-2022 Five Year Program. Lease Sale 257 was the eighth of eleven scheduled sales on the 2017-2022 Five Year Program's schedule. In August 2021, the agency determined to proceed with Lease Sale 257 and concluded that three prior environmental impact

4

statements it had prepared fulfilled its NEPA obligations for the sale. Plaintiff environmental groups filed suit in district court challenging Interior's record of decision for the sale on NEPA grounds. The American Petroleum Institute and the state of Louisiana intervened as defendants. In October 2021, while litigation was proceeding in the district court concerning Interior's NEPA compliance, Interior issued a final notice of sale. The sale was held on November 17, 2021.

After the sale, all parties moved for summary judgment and the district court granted in part and denied in part each motion. *Friends of the Earth v. Haaland*, 583 F. Supp. 3d ---, 2022 WL 254526 (D.D.C. 2022) (Memorandum Opinion, ECF 78; Order (ECF 77)). The court held that most aspects of Interior's NEPA analysis were satisfactory, but agreed with Plaintiffs that the agency had failed to adequately quantify greenhouse gas emissions in its programmatic analysis, and that this was not cured by the agency's discussion of the issue in subsequent analyses. *See id.* at *10–*18. The court further determined that vacatur of the agency's record of decision was the appropriate remedy. *Id.* at *25–*28. American Petroleum Institute and Louisiana have appealed the district court's opinion and order.

**C.    Subsequent Developments**

On August 16, 2022, the President signed the Inflation Reduction Act.

Section 50264 of the statute concerns lease sales under Interior's 2017-2022

Five Year Program, which expired on June 30, 2022.  Subsection (b), entitled

"Lease Sale 257 Reinstatement," reads:

> (1)    ACCEPTANCE OF BIDS.  Not later than 30 days after the date of enactment of this Act, the Secretary shall, without modification or delay—
>> (A)    accept the highest valid bid for each tract or bidding unit of Lease Sale 257 for which a valid bid was received on November 17, 2021; and
>> (B)    provide the appropriate lease form to the winning bidder to execute and return.
> (2)    LEASE ISSUANCE.  On receipt of an executed lease form under paragraph (1)(B) and payment of the rental for the first year, the balance of the bonus bid (unless deferred), and any required bond or security from the high bidder, the Secretary shall promptly issue to the high bidder a fully executed lease, in accordance with—
>> (A)    the regulations in effect on the date of Lease Sale 257; and
>> (B)    the terms and conditions of the final notice of sale entitled "Gulf of Mexico Outer Continental Shelf Oil and Gas Lease Sale 257" (86 Fed. Reg. 54728 (October 4, 2021)).

On September 14, 2022, Interior complied with the Inflation

Reduction Act by accepting 307 bids and mailing the bidders lease forms;

consistent with the Act, the leases are in accordance with the regulations

in effect on November 17, 2021, and the terms and conditions outlined in

the October 4, 2021, final notice of sale.  *See* Statement from the Bureau of

Ocean Energy Management, *https://www.boem.gov/newsroom/press-releases/compliance-ira-boem-reinstates-lease-sale-257-bids* (last accessed Sept. 14, 2022).  Interior now awaits the execution and return of these forms, and once it receives them and any payment due, it will promptly issue the fully executed leases.

## ARGUMENT

As a result of the Inflation Reduction Act, Plaintiffs' underlying complaint, on which they were granted relief, no longer states a valid claim upon which relief may be granted.  This suit is therefore moot and the court lacks jurisdiction to hear it.  Without regard to the underlying merits of the district court's opinion, the Court should vacate the district court's judgment and remand with instructions to dismiss the complaint as moot.  If the Court nevertheless declines to dispose of the case in that manner, then, because Appellants have received the only relief they have sought—the ability of the highest valid bidders on Lease Sale 257 to receive leases—the appeals are moot and should be dismissed.

## I.    The case is moot.

Article III, Section II of the Constitution confers upon federal courts jurisdiction only over live cases and controversies.  *See United Brotherhood of Carpenters & Joiners of Am., AFL-CIO v. Operative Plasterers' & Cement Masons' Int'l*

*Ass'n. of U.S. & Canada, AFL-CIO*, 721 F.3d 678, 687 (D.C. Cir. 2013). If an intervening event occurs during the appeal process that prevents the court from granting any effective relief, the case becomes moot. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). The enactment of a new law that resolves the parties' dispute during the pendency of an appeal typically renders a case moot. *See Nuclear Energy Inst. v. EPA*, 373 F.3d 1251, 1309 (D.C. Cir. 2004) ("Where Congress enacts intervening legislation that definitively resolves the issues a litigant seeks to put before us, the claims are moot and we are precluded from deciding them."); *accord Am. Bar Ass'n v. Federal Trade Comm'n*, 636 F.3d 641, 643 (D.C. Cir. 2011) ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is pending."); *see generally* Wright & Miller, *Fed. Prac. and Proc.* § 3533.6 (Superseding Legislative Action). Where no live dispute remains, barring exceptional circumstances not present here, a court's jurisdiction ends. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 447 (1990).

Plaintiffs challenged, and the district court vacated, Interior's record of decision to hold Lease Sale 257. While this appeal was pending, Congress passed a statute directing Interior to dispose of certain federal property on specified terms. Section 50264(b) of the new statute, by directing the disposition of specified federal property, changed the law regarding the

8

disposition of that federal property, revoking Interior's discretion regarding whether to affirm any bids and issue leases to the highest valid bidders from Lease Sale 257.

In so doing, Congress's change to existing law removed any basis for Plaintiffs' underlying claim. First, the statute removes Interior's discretion to accept or reject bids and withdraw certain tracts prior to issuing any leases as a result of Lease Sale 257. By directing that Interior issue leases to the highest valid bidders and specifying certain terms, Congress removed Interior's discretion with regard to these leases, specifically whether and when to affirm any bids and issue leases, thus rendering the sale nondiscretionary. Accordingly, Interior need not further comply with NEPA. Second, even if it had left Interior with discretion, the Act directs Interior to accept bids within 30 days and without modification or delay. That timeline makes it impossible for Interior to implement NEPA, and well-established case law provides that NEPA must yield in this circumstance. As NEPA is no longer applicable, there is no underlying controversy and thus no jurisdiction to hear this case.

**A.    Because the Inflation Reduction Act removed Interior's discretion respecting the subject leases, Plaintiffs' NEPA claim is moot.**

This suit must be dismissed as moot because Interior now lacks discretion to do anything but the ministerial task of issuing leases to the highest

valid bidders of Lease Sale 257.  An environmental impact statement is required only for "major federal actions," which is defined to exclude activities and decisions that are non-discretionary.  *See* 40 C.F.R. § 1508.1(q)(1)(ii); *see also Dep't of Transp. v. Public Citizen*, 541 U.S. 752 (2004) (an agency need not analyze environmental effects of an action it has no discretion to avoid).  By removing Interior's discretion regarding whether and what bids to accept from Lease Sale 257, when, and on what terms, § 50264(b) means that Interior lacks discretion regarding whether to move forward with lease issuance, and any NEPA requirement to analyze the effects of that act no longer applies.

Plaintiffs' lawsuit concerns alleged defects in Interior's NEPA documentation supporting Lease Sale 257.  Specifically, Plaintiffs alleged that it was arbitrary and capricious for Interior to rely on a greenhouse gas emissions analysis of the sale that did not quantify emissions associated with foreign consumption, and that the agency's environmental impact statement was therefore arbitrary and capricious.  *See* ECF 1 (complaint).  By removing Interior's discretion, however, the Inflation Reduction Act requires Interior to move forward with disposing of federal property irrespective of any additional NEPA analysis in advance of issuing these leases.  Plaintiffs' claim, premised on deficiencies in the no longer requisite environmental impact statement, is now moot.  By *requiring* the agency to accept the highest valid bids "without

10

modification or delay" and to issue leases on specified terms, Section 50264(b)

turns what had been a discretionary act into a nondiscretionary one. As a

result, NEPA's environmental impact statement requirement does not apply.

Because the environmental impact statement that is the subject of this lawsuit

is no longer required—indeed, is entirely unnecessary—there is no longer a live

controversy and the case is moot. *See*, *e.g.*, *State of Nevada v. Watkins*, 943 F.2d

1080 (9th Cir. 1991) (challenge to Secretary of Energy's compliance with

NEPA was moot where Congress passed a statute directing Secretary to move

forward with particular agency action). "[F]urther judicial pronouncement on

[the document] would be purely advisory." *Center for Science in the Public

Interest v. Regan*, 727 F.2d 1161, 1164 (D.C. Cir. 1984); *see also Mobil Oil Corp. v.

EPA*, 35 F.3d 579, 582–83 (D.C. Cir. 1994) ("A 'court is not empowered to

decide moot questions or abstract propositions, or to declare, for the

government of future cases, principles or rules of law which cannot affect the

result as to the thing in issue in the case before it.'") (quoting *California v. San

Pablo & Tulare R.R. Co.*, 149 U.S. 308, 314 (1893)).

    **B.**    **The statute's 30-day compliance deadline confirms
Congress did not intend for the agency to engage in
additional NEPA analysis.**

The Inflation Reduction Act's 30-day deadline confirms that Congress

did not intend for Interior to comply with NEPA before accepting the highest

valid bids and issuing the lease forms.  NEPA compliance is only required where it is practicable for an agency to prepare an environmental impact statement.  Where, as here, there is a clear and unavoidable conflict between NEPA compliance and another statutory mandate, NEPA yields.  *See Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Oklahoma*, 426 U.S. 776, 788 (1976); *Izaak Walton League of America v. Marsh*, 655 F.2d 346, 367 (D.C. Cir. 1981) (a "direct contradiction" between NEPA and new legislation renders NEPA inapplicable).  This case is on all fours with *Flint Ridge*, where the Supreme Court considered whether an agency with a 30-day statutory deadline to complete a particular task was also required to prepare an environmental impact statement, despite the fact that compliance with NEPA would take more than 30 days.  The Court held that, if a time frame imposed by statute on the agency is too short for the agency to prepare an environmental impact statement, an environmental impact statement is not required.  As the Court explained, the statutory directive requiring NEPA compliance "to the fullest extent possible," 42 U.S.C. § 4332, reflected congressional intent "that where a clear and unavoidable conflict in statutory authority exists, NEPA must give way."  *Flint Ridge*, 426 U.S. at 788.

Courts have regularly found a clear and unavoidable conflict between NEPA and other statutes where the other statute contains a clear, unyielding,

and rapid deadline.  *See Jamul Action Comm. v. Chaudhuri*, 837 F.3d 958, 964

(9th Cir. 2016) (finding NEPA inapplicable where statute imposed 90-day

compliance timeline); *City of New York v. Minetta*, 262 F.3d 169, 182–83 (2d Cir.

2001) (finding NEPA inapplicable where statute imposed 60-day compliance

timeline); *Westlands Water Dist. v. Natural Res. Def. Council*, 43 F.3d 457, 460

(9th Cir. 1994) (finding NEPA inapplicable where statute required agency

action "upon enactment of this title"); *cf. Consejo de Desarrollo Economico de

Mexicali, A.C. v. United States*, 482 F.3d 1157, 1169 (9th Cir. 2007) (intervening

statute requiring agency action to move forward "without delay" rendered

environmental claims, including NEPA claim, moot).

    Inflation Reduction Act section 50264(b)(1) requires Interior to accept

the highest valid bids "not later than 30 days after the enactment of this Act."

Thus, as in *Flint Ridge* itself, there was an unyielding 30-day statutory deadline

for agency action, and within that 30-day deadline, it was not possible for

Interior to comply with NEPA.  It was inconceivable that, within 30 days,

Interior could have issued a conforming supplemental environmental impact

statement, noticed that statement for public comment, reviewed comments and

revised the statement in light of those comments, and issued a final

13

supplemental environmental impact statement.[1]  Because it was impossible for

Interior to comply with both NEPA and the statute's 30-day mandate, NEPA

no longer applies to Lease Sale 257.  And as NEPA no longer applies, the

underlying controversy concerning Interior's NEPA compliance is now moot.[2]

## C.   Vacatur is the established practice in these circumstances.

Where congressional action rather than mere happenstance has altered

the posture of a case, the "established practice" is to vacate the judgment on

review.  *United States v. Microsoft Corp.*, 138 S.Ct. 1186, 1188 (2018); *accord*

---

[1] For details on the minimum amount of time it would take for Interior to issue a new environmental impact statement, see pages 7–9 of Federal Appellees' February 28, 2022 filing, Doc. No. 1937024.

[2] Nor do either of the exceptions to mootness apply.  This case does not fall within the 'capable of repetition, yet evading review' exception because a recurrence of the challenged activity (that is, future lease sales) will not evade review should the parties have a dispute about compliance with NEPA in connection with such activity.  If Plaintiffs are dissatisfied with Interior's NEPA compliance with future sales, Plaintiffs may seek judicial review at that time.  Moreover, voluntary cessation is not at issue here, as the agency's action was not taken in order to avoid litigation or manipulate the judicial process.  *See Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229–30 (D.C. Cir. 2021) ("The established law of this circuit is that 'the voluntary cessation exception to mootness has no play' when the agency did not act 'in order to avoid litigation.'") (*quoting Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 648 (D.C. Cir. 2011)).  Interior's decision to issue leases to the high bidders from Lease Sale 257 is compelled by statute, not a voluntary act of the agency.  *See Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641, 648 (D.C. Cir. 2011) (noting that a scenario where agency takes new action as a result of passage of a new statute "is not within the compass of the voluntary cessation exception to mootness").

*Bureau of Alcohol, Tobacco, and Firearms v. Galioto*, 477 U.S. 556, 560 (1986)

(Where congressional statute moots pending appeal, "'it is the duty of the

appellate court to set aside the decree below'") (quoting *Duke Power Co. v.

Greenwood Cty.*, 299 U.S. 259, 267 (1936)); *see also Am. Bar. Ass'n v. Fed. Trade

Comm'n*, 636 F.3d 641, 648–49 (D.C. Cir. 2011).  That established practice

applies to this case, where mootness is due to passage of a statute and not

attributable to any of the parties.  *See, e.g.*, *U.S. v. Microsoft Corp.*, 138 S.Ct. at

1188; *Arkansas v. Gresham*, 142 S.Ct. 1665 (2022) (vacating judgment of circuit

court and remanding with instructions for district court to vacate its judgment

and dismiss the complaint); *Am. Bar Ass'n v. Fed. Trade Comm'n*, 636 F.3d 641,

649 (D.C. Cir. 2011) ("The [*U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*,

513 U.S. 18, 25 (1994)] presumption [that vacatur is inappropriate when the

appellant's voluntary action has caused mootness] is inapposite here because

the [agency] . . . did nothing to render this case moot."); *Rio Grande Silvery

Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1131 (10th Cir. 2010) (holding

that legislative action should not be attributed to federal agencies in assessing

vacatur because "the acts of the legislature are not the acts of executive branch

agencies, states, or private parties").  Accordingly, without regard to the

underlying merits of the district court's opinion, the Court should vacate the

judgment of the district court and remand the case to the district court with directions to dismiss the complaint as moot.

## II.    In the alternative, these appeals are moot and should be dismissed.

If the Court nevertheless declines to vacate the judgment below and remand with directions to dismiss the complaint as moot, at minimum, this Court should dismiss the appeals as moot.

Article III of the Constitution requires an intervenor seeking to take an appeal in the absence of the party it supported below to independently demonstrate an injury which: (1) is concrete, particularized, and non-speculative; (2) was caused by the adverse judgment below; and (3) can be redressed by this Court on appeal.  *See Diamond v. Charles*, 476 U.S. 54, 68 (1986) ("[A]n intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III.").  Where, in the course of litigation, an appellant can no longer demonstrate each of these requirements due to intervening events, the case becomes moot.  *See State of Nevada v. Watkins*, 943 F.2d 1080, 1083 (9th Cir. 1991) (case became moot because a statute passed while appeal was pending deprived the court of the ability to redress the parties' injuries); *see also* Wright & Miller, *Fed. Prac. and*

16

*Proc.* § 3092 ("Standing may blend with concepts of mootness when subsequent events obviate the injury initially caused by the lower court order.").

Intervenors were injured by the district court's order vacating the sale, as their material interests were affected by the invalidation of the sale, precluding issuance of leases from which they would benefit. The IRA, however, *requires* Interior to accept the highest valid bids and execute the resulting leases. This outcome would occur regardless of what the Court might have decided regarding Interior's NEPA compliance if Congress had not acted. Accordingly, Congress has already remedied their injury, and the Court cannot offer Intervenors any further effective relief. *Cf. Mobil Oil Corp. v. EPA*, 35 F.3d 579, 583 (D.C. Cir. 1994) (holding case moot where intervening statute directed agency action, court was not empowered to order different relief). As the Court now lacks the ability to offer intervenors any effectual relief, the appeal is moot and should be dismissed if the Court does not vacate the judgment of the district court and remand with direction to dismiss the complaint as moot.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's judgment and remand with instructions to dismiss the complaint as moot.

17

Respectfully submitted,

s/ Michelle Melton
TODD KIM
*Assistant Attorney General*

Of Counsel:

ROBERT LUNDMAN
LUTHER HAJEK

NATALIE EADES
*Attorney-Advisor*
Office of the Solicitor,
U.S. Dep't of the Interior

MICHELLE MELTON
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice

September 15, 2022

DJ# 90-1-4-16445

18

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit in Federal Rule of Appellate Procedure 27(d)(2)(A), because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 27(a)(2)(B), this document contains 3,955 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

s/ *Michelle Melton*
MICHELLE MELTON
Counsel for Federal Appellees