**ORAL ARGUMENT NOT YET SCHEDULED**

Nos. 22-5036 & 22-5037

IN THE

# United States Court of Appeals for the District of Columbia Circuit

FRIENDS OF THE EARTH, *et al.*,

Plaintiffs-Appellees,

v.

DEBRA A. HAALAND, in her official capacity as Secretary of the Interior, *et al.*,

Defendants-Appellees,

AMERICAN PETROLEUM INSTITUTE and STATE OF LOUISIANA,

Intervenors-Appellants.

On Appeal from the United States District Court for the District of Columbia
No. 1:21-cv-02317-RC, District Judge Rudolph Contreras

**FINAL REPLY BRIEF FOR APPELLANTS AMERICAN PETROLEUM INSTITUTE AND STATE OF LOUISIANA**

JEFF LANDRY
Attorney General
ELIZABETH B. MURRILL
Solicitor General
JOSEPH S. ST. JOHN
Deputy Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street
Baton Rouge, Louisiana 70804
(225) 326-6766

*Counsel for Louisiana*

CATHERINE E. STETSON
SEAN MAROTTA
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for American Petroleum Institute*

(Additional counsel listed on inside cover)

Additional counsel:

TYLER R. GREEN
JEFFREY S. HETZEL
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, Utah 84101
(703) 243-9423

*Counsel for Louisiana*

JONATHAN A. HUNTER
SARAH Y. DICHARRY
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
(504) 582-8000

*Counsel for American Petroleum Institute*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ... iii

GLOSSARY ... vii

INTRODUCTION AND SUMMARY OF ARGUMENT ... 1

ARGUMENT ... 6

I. PLAINTIFFS EXPAND THE ADMINISTRATIVE-REMAND RULE PAST ALL KNOWN LIMITS, AND API AND LOUISIANA'S APPEALS ARE NOW OR NEVER ... 6

A. The administrative-remand rule does not apply to vacate-and-remand orders like the District Court's here ... 7

B. Plaintiffs take an unduly narrow view of this Court's now-or-never exception to the administrative-remand rule ... 13

II. INTERIOR SATISFIED ITS NEPA OBLIGATIONS EVEN THOUGH IT DID NOT QUANTIFY FOREIGN EMISSIONS FROM LEASE SALE 257 ... 15

A. NEPA does not require Interior to quantify global emissions from the no-action alternative in its lease sale EIS because emissions are not caused by any of the activities permitted at the lease-sale phase ... 15

B. Plaintiffs cannot explain away this Court's holding that OCSLA forbids consideration of global impacts of fossil fuels in deciding whether to forego a lease sale ... 18

C. In all events, Interior adequately considered the global greenhouse-gas emissions from Lease Sale 257, and Plaintiffs cannot explain away the Stockholm Environmental Institute working paper's unreliability ... 22

**TABLE OF CONTENTS—Continued**

Page

III. PLAINTIFFS CANNOT REHABILITATE THE DISTRICT COURT'S MISUNDERSTANDING OF THE LEGAL STANDARDS FOR REMAND WITHOUT VACATUR .......................26

A. Plaintiffs cannot explain away the District Court's misinterpretation of *Standing Rock* and *Allied-Signal*...................26

B. Plaintiffs cannot justify the district court's novel *caveat emptor* rationale for ignoring industry's reliance interests and investments and OCSLA's mandated sealed-bid process.........................................................28

CONCLUSION.................................................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page

**CASES:**

*Action on Smoking & Health v. Civil Aeronautics Bd.*,
713 F.2d 795 (D.C. Cir. 1983) ........................................................8

**Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) ........................................................5, 27, 28

*Alsea Valley Alliance v. Department of Commerce*,
358 F.3d 1181 (9th Cir. 2004) ........................................................10

*Amarin Pharmaceuticals Ireland Ltd. v. FDA*,
No. 15-5214, 2015 WL 9997417 (D.C. Cir. Dec. 9, 2015) ........................................................9

*American Great Lakes Ports Ass'n v. Schultz*,
962 F.3d 510 (D.C. Cir. 2020) ........................................................ 11-14

* *American Hawaii Cruises v. Skinner*,
893 F.2d 1400 (D.C. Cir. 1990) ........................................................8, 10

*Califano v. Sanders*,
430 U.S. 99 (1977) ........................................................29, 30

*Center for Biological Diversity v. Bernhardt*,
982 F.3d 723 (9th Cir. 2020) (*Liberty*) ........................................................18, 24, 28

**Center for Biological Diversity v. U.S. Dep't of Interior*,
563 F.3d 466 (D.C. Cir. 2009) (*CBD*) ........................................................ 4, 18-21

*Center for Sustainable Econ. v. Jewell*,
779 F.3d 588 (D.C. Cir. 2015) ........................................................25

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........................................................29

*Cook Inlet Tribal Council v. Mandregan*,
No. 14-cv-1835 (EGS), 2019 WL 3816573 (D.D.C. Aug. 14, 2019) ................10

* Authorities upon which we chiefly rely are marked with an asterisk.

**TABLE OF AUTHORITIES—Continued**

Page

*Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*,
684 F.3d 1242 (11th Cir. 2012) ....................25

*Defenders of Wildlife v. Bureau of Ocean Energy Mgmt., Regul., & Enf't*,
871 F. Supp. 2d 1312 (S.D. Ala. 2012) ....................16

*Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*,
718 F.3d 974 (D.C. Cir. 2013) ....................28

*Department of Transp. v. Public Citizen*,
541 U.S. 752 (2004) ....................21

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) ....................12

*Gulf Restoration Network v. Haaland*,
47 F.4th 795 (D.C. Cir. 2022) ....................30, 31

*Hagans v. Lavine*,
415 U.S. 528 (1974) ....................9

*Illinois Commerce Comm'n v. ICC*,
848 F.2d 1246 (D.C. Cir. 1988) ....................23

*In re Grand Jury Investigation*,
916 F.3d 1047 (D.C. Cir. 2019) ....................19

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
751 F.3d 629 (D.C. Cir. 2014) ....................13

*International Union, Sec., Police & Fire Pros. of Am. v. Faye*,
828 F.3d 969 (D.C. Cir. 2016) ....................19, 20

*Johnson v. U.S. R.R. Ret. Bd.*,
969 F.2d 1082 (D.C. Cir. 1992) ....................28

*Lebron v. National R.R. Passenger Corp.*,
513 U.S. 374 (1995) ....................19

**TABLE OF AUTHORITIES—Continued**

Page

*Limnia, Inc. v. U.S. Dep't of Energy*,
857 F.3d 379 (D.C. Cir. 2017)....................12

*Mall Props., Inc. v. Marsh*,
841 F.2d 440 (1st Cir. 1988)....................8

*Native Village of Point Hope v. Jewell*,
740 F.3d 489 (9th Cir. 2014)....................17, 18

*Nebraska Dep't of Health & Human Servs. v. Department of Health & Human Servs.*,
435 F.3d 326 (D.C. Cir. 2006)....................11

*Nevada v. Department of Energy*,
457 F.3d 78 (D.C. Cir. 2006)....................23

*North Carolina Fisheries Ass'n v. Gutierrez*,
550 F.3d 16 (D.C. Cir. 2008)....................7

* *North Slope Borough v. Andrus*,
642 F.2d 589 (D.C. Cir. 1980)....................3, 16-18

*Pit River Tribe v. U.S. Forest Service*,
615 F.3d 1069 (9th Cir. 2010)....................10

*Pueblo of Sandia v. Babbitt*,
231 F.3d 878 (D.C. Cir. 2000)....................9, 10

*Scenic Am., Inc. v. U.S. Dep't of Transp.*,
836 F.3d 42 (D.C. Cir. 2016)....................9

*Sierra Club v. U.S. Dep't of Agric.*,
716 F.3d 653 (D.C. Cir. 2013)....................7

*Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*,
555 F. Supp. 3d 739 (D. Alaska 2021) (*Willow*)....................18, 24

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
985 F.3d 1032 (D.C. Cir. 2021)....................26, 27

**TABLE OF AUTHORITIES—Continued**

Page

*U.S. Sugar Corp. v. EPA*,
830 F.3d 579 (D.C. Cir. 2016) .......... 24

*Wilderness Soc'y v. Salazar*,
603 F. Supp. 2d 52 (D.D.C. 2009) .......... 16

**STATUTES:**

28 U.S.C. § 1291 .......... 2, 7, 12

Inflation Reduction Act, Pub. L. No. 117-169, § 50264(c)-(e), 136 Stat. 1818, 2060 (2022) .......... 13

**REGULATIONS:**

40 C.F.R. § 1502.22 .......... 24

40 C.F.R. § 1508.18(b)(4) .......... 17

**OTHER AUTHORITIES:**

*Lease Sale 258*, BOEM, https://www.boem.gov/oil-gas-energy/leasing/lease-sale-258 (last visited Jan. 11, 2023) .......... 13

*Lease Sale 259*, BOEM, https://www.boem.gov/oil-gas-energy/leasing/lease-sale-259 (last visited Jan. 11, 2023) .......... 13

## GLOSSARY

| | |
|---|---|
| APA: | Administrative Procedure Act |
| API: | American Petroleum Institute |
| Interior: | U.S. Department of the Interior |
| NEPA: | National Environmental Policy Act |
| OCS: | Outer Continental Shelf |
| OCSLA: | Outer Continental Shelf Lands Act |

IN THE

# United States Court of Appeals for the District of Columbia Circuit

---

Nos. 22-5036 & 22-5037

---

FRIENDS OF THE EARTH, *et al.*,

Plaintiffs-Appellees,

v.

DEBRA A. HAALAND, in her official capacity as Secretary of the Interior,

Defendants-Appellees,

AMERICAN PETROLEUM INSTITUTE and STATE OF LOUISIANA,

Intervenor-Appellants.

---

On Appeal from the United States District Court
for the District of Columbia
No. 1:21-cv-02317-RC
District Judge Rudolph Contreras

---

**FINAL REPLY BRIEF FOR APPELLANTS AMERICAN PETROLEUM INSTITUTE AND STATE OF LOUISIANA**

---

## INTRODUCTION AND SUMMARY OF ARGUMENT

For the reasons explained in API and Louisiana's motion to dismiss and vacate, the Inflation Reduction Act has rendered Plaintiffs' case—and this appeal—moot by directing that the Lease Sale 257 acreage be leased to the Lease Sale 257 high bidders, making the legality of the Record of Decision challenged by

Plaintiffs' suit irrelevant. The Court should therefore dismiss the appeals as moot, vacate the District Court's judgment and opinion, and remand with instructions to dismiss the case.

If the Court denies the motion to dismiss and vacate, the Court should reverse the District Court's judgment.[1] Plaintiffs' challenge to the Court's jurisdiction under the administrative-remand rule is meritless. Plaintiffs posit a world where any district court order with the word "remand" is presumptively unappealable by a private party. But the administrative-remand rule has never been that broad; it applies only when the core dispute between the parties remains unresolved, such as when a district court remands without vacatur and requires proceedings on remand that can return for future judicial review. That is quite different from this case—and most all vacatur cases—where the district court nullifies the agency action, remands, and leaves the agency to take further action, or not, as it wishes. Plaintiffs' capacious vision of the administrative-remand rule has no grounding in either 28 U.S.C. § 1291 or the case law.

[1] Because this brief assumes that the Court has held that the Inflation Reduction Act does not modify Interior's NEPA or other obligations with respect to Lease Sale 257 or the acreage auctioned in Lease Sale 257, we do not repeatedly caveat that the Inflation Reduction Act has changed or made irrelevant the issues discussed.

Even if the District Court's remand order were non-final, this is a case where a private-party intervenor can appeal a remand order to which the administrative-remand rule applies. Interior can never hold another Lease Sale 257 because the 2017-2022 Five Year Plan has expired, and it is speculative at best that Interior will ever decide to include—or not include—the Lease Sale 257 acreage at issue in a future sale under a different five-year plan. The administrative-remand rule is premised on the notion that an appeal is not denied, only delayed. But if API and Louisiana cannot appeal now, they never can. They can therefore bring their appeal now.

On the merits, Interior appropriately did not quantify the global greenhouse-gas emissions that would result if Lease Sale 257 were not held. NEPA does not require Interior to measure environmental effects that are not a direct cause of the lease-sale phase that Interior is undertaking. Greenhouse gases are not caused by leasing; they are caused by the combustion of oil after exploration and production. At the leasing phase, whether oil will be found and in what quantities is speculative; NEPA therefore does not require Interior to measure impacts from drilling and combustion at the lease-sale phase. Plaintiffs' attempt to limit this Court's case so holding, *North Slope Borough v. Andrus*, 642 F.2d 589, 606 (D.C. Cir. 1980), to its facts is unpersuasive; courts here and elsewhere apply *Andrus*'s principles beyond its particular facts.

NEPA also did not require Interior to measure global greenhouse-gas impacts from Lease Sale 257 because this Court held in *Center for Biological Diversity v. U.S. Department of Interior*, 563 F.3d 466 (D.C. Cir. 2009) (*CBD*) that the Outer Continental Shelf Lands Act of 1953 (OCSLA) is focused exclusively on the *local* environmental risks of OCS oil-and-gas development and forbids consideration of global climate impacts. Plaintiffs try to dismiss *CBD*'s holding about global climate impacts as *dicta*, but its statement that OCSLA *forbids* consideration of global climate impacts was prior and necessary to its ultimate holding that OCSLA does not *require* consideration of global climate impacts. That makes it binding. Plaintiffs are also wrong that NEPA requires Interior to consider impacts OCSLA forbids; agencies need not include in their NEPA analysis considerations that they are not allowed to act on. Interior cannot decline to hold a lease sale because of global climate impacts, so it need not include global climate impacts as part of its no-action alternative.

Even if NEPA did require Interior to consider global greenhouse-gas impacts, Interior did all the statute demands. It qualitatively explained that not holding Lease Sale 257 would likely reduce foreign oil usage somewhat, but that it did not have reliable information as to how foreign nations would substitute other, potentially dirtier, energy sources in its place and so could not quantify the decrease. Plaintiffs argue that Interior's resulting analysis misled the public and

decisionmakers by suggesting that Lease Sale 257 would reduce global emissions, but Interior never made that claim. Moreover, NEPA does not require agencies to quantify impacts if it cannot be done reliably. Plaintiffs point to a working paper that they contend would have solved all of Interior's difficulties, but the paper is shot through with questionable assumptions that make it unreliable for Interior's purposes—criticisms that Plaintiffs never address. Plaintiffs instead contend that Interior did not adequately explain its decision to reject the working paper, but Interior properly recognized and stated that *none* of the literature included reliable global data, a criticism that applies to Plaintiffs' favorite working paper. Plaintiffs might prefer a more-verbose explanation, but NEPA does not require it.

At the very least, the Court should direct that the District Court's remand be without vacatur. The District Court misconstrued *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993) by demanding that it be more than "conceivable" that Interior can fix its supposed NEPA mistakes and again decide to conduct Lease Sale 257. And the District Court created a heretofore unknown "buyer beware" test to the disruptive-consequences prong of the *Allied-Signal* analysis found nowhere in this Court's case law, forbidding remand without vacatur where regulated parties participate in an agency action while knowing it is the subject of litigation. Lease Sale 257 bidders reasonably relied on the presumption of regularity that attached to the Record of

Decision, and the District Court's vacatur order unjustifiably upset those interests, costing the bidders significant effort and money. Moreover, the District Court's vacatur order runs roughshod over OCSLA's requirement that auctions be by "sealed bid" where bidders do not know their competitors' valuations for the auctioned acreage ahead of time. Now that bidders' Lease Sale 257 valuations have been revealed, any future sale of the Lease Sale 257 acreage will be corrupted by competitiors' knowledge of each other's valuations.

If the Court does not dismiss Plaintiffs' case as moot, it should reverse.

## ARGUMENT

### I. PLAINTIFFS EXPAND THE ADMINISTRATIVE-REMAND RULE PAST ALL KNOWN LIMITS, AND API AND LOUISIANA'S APPEALS ARE NOW OR NEVER.

Plaintiffs do not deny that the District Court's order in this case is final under all of the usual measures. It resolves all claims as to all parties. It was intended to be the District Court's final decision in the case. And it marks the District Court disassociating itself from the case by vacating the Record of Decision supporting Lease Sale 257 and all of Interior's related actions, restoring the pre-Record of Decision status quo. *See* API Br. 15-16. Plaintiffs also do not deny that if API and Louisiana cannot appeal now, Interior will never be able to hold a new Lease Sale 257. *Cf.* Plaintiffs Br. 19. Now that the 2017-2022 Five Year Plan has expired, there can be no new Lease Sale 257. Any new sale of the

Lease Sale 257 acreage would be a completely new lease sale under a new Five Year Plan, and it is speculative whether the Lease Sale 257 acreage would be included in any future Five Year Plan or future lease sale. *See* API Br. 19.

Plaintiffs nonetheless insist that this Court lacks jurisdiction over API and Louisiana's appeals under the "administrative-remand rule." Plaintiffs Br. 17-23. But Plaintiffs stretch the administrative-remand rule farther than this Court ever has, taking it from cases where the district court remanded to the agency for further, mandatory action and applying it to essentially every administrative-procedure case. And Plaintiffs misconstrue this Court's exception to the administrative-remand rule for district court decisions that cannot be effectively reviewed following remand, which even Interior agrees applies here. For either reason, the District Court's vacate-and-remand order is final.

### A. The administrative-remand rule does not apply to vacate-and-remand orders like the District Court's here.

Under this Circuit's administrative-remand rule, "a district court's remand order is not normally 'final' for purposes of appeal under 28 U.S.C. § 1291." *Sierra Club v. U.S. Dep't of Agric.*, 716 F.3d 653, 656 (D.C. Cir. 2013) (quoting *North Carolina Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 19 (D.C. Cir. 2008)). Plaintiffs cite this Court's statement of that rule. Plaintiffs Br. 17. But they lose sight of the doctrine *underlying* the rule. The typical remand order does "not resolve the controversy"; an "order remanding [a] matter with instructions to the

[agency] to engage in reasoned decisionmaking surely d[oes] not end the litigation on the merits." *American Hawaii Cruises v. Skinner*, 893 F.2d 1400, 1402 (D.C. Cir. 1990) (per curiam). Regardless of "whether the district court 'remanded but retained jurisdiction' pending further agency consideration, or remanded and simultaneously dismissed the civil action," the key question is whether "the district court's order leaves the core dispute unresolved, and simply turns it back for further proceedings by the agency." *Id.* at 1403 (quoting *Mall Props., Inc. v. Marsh*, 841 F.2d 440, 441 & n.2 (1st Cir. 1988)).

A remand that leaves the core dispute unresolved but remands for further agency proceedings is typical of remand without vacatur. *See* API Br. 16-17. When a court's remand is with vacatur, the court has decided the dispute between the parties; it has granted the plaintiffs the relief they requested, "annul[ling]" the agency action under review, *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (per curiam); and it has returned the parties to the state of affairs before the agency acted. When a court remands *without* vacatur, by contrast, the agency is directed to re-do its homework and judicial decision on the principal relief the plaintiffs requested—setting the agency action aside—is pretermitted until the remand is complete. The first kind of remand order is final; the second is not. API Br. 16-17.

Plaintiffs' only response is to argue that *Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 879-881 (D.C. Cir. 2000), where this Court applied the administrative-remand rule in the face of a district court order that vacated the agency action under review, is "directly on point." Plaintiffs Br. 22; *see also* API Br. 18 (discussing *Pueblo of Sandia*). But Plaintiffs admit that "the finality argument based on vacatur was never made in that case." Plaintiffs Br. 22. They instead argue that if vacatur was the key issue, the appellants in *Pueblo of Sandia* surely would have spotted it. *Id.* But the Supreme Court has warned against reading into silence as Plaintiffs do; "when questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before" it. *Hagans v. Lavine*, 415 U.S. 528, 533 n.5 (1974). Moreover, "a party . . . can forfeit a claim that [this Court] possess[es] jurisdiction," *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016), so the appellant's failure in *Pueblo of Sandia* to make a vacatur-based finality argument forfeited a vacatur-based theory of appellate jurisdiction without any need for this Court to raise it *sua sponte*.

The same is true of Plaintiffs' other cited cases. *Amarin Pharmaceuticals Ireland Ltd. v. FDA*, No. 15-5214, 2015 WL 9997417 (D.C. Cir. Dec. 9, 2015) (per curiam), an unpublished motion order, does not grapple with any of API's arguments, stating that the district court's order was not appealable because "it

anticipates further agency action not limited to merely 'ministerial' proceedings." The parties in *Cook Inlet Tribal Council v. Mandregan*, No. 14-cv-1835 (EGS), 2019 WL 3816573, at *5 (D.D.C. Aug. 14, 2019), "agree[d]" that the order "was not a final judgment." And neither of the two Ninth Circuit cases that Plaintiffs cite—*Pit River Tribe v. U.S. Forest Service*, 615 F.3d 1069 (9th Cir. 2010), or *Alsea Valley Alliance v. Department of Commerce*, 358 F.3d 1181, 1185-86 (9th Cir. 2004)—addressed the key differences between remand with and without vacatur and how only remand without vacatur leaves the core dispute between the parties unresolved, warranting designation as nonfinal.[2]

To be clear, the distinction is not necessarily that all remands without vacatur are nonfinal and that all remands with vacatur are; instead, the question is always whether the district court's order "leaves the core dispute unresolved" by requiring the agency to take further action and contemplating further judicial review afterwards. *American Hawaii Cruises*, 893 F.2d at 1403. *Pueblo of Sandia* is therefore consistent with API's argument because the Court believed that, even with vacatur, the agency would be compelled to act on remand by approving or denying the appellant's corrected-survey request. 231 F.3d at 879. But that is far

---

[2] *Alsea Valley Alliance* mentioned vacatur, but in service of rejecting the appellant's argument that the district court's vacatur order was appealable separate from its order declaring the agency action unlawful. *Alsea Valley*, 358 F.3d at 1185. It did not touch on the argument that API makes here.

from this case where the District Court stated that its order "allow[s] the agency an opportunity to remedy its NEPA error as it so chooses in the first instance," without "specify[ing] how [Interior] must do so, on what timeline, or what ultimate conclusion it must reach." JA347 [Op. 67]; *see American Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 515 (D.C. Cir. 2020) (remand order was final where it "d[id] not instruct the Coast Guard to reopen the [agency action] and conduct further proceedings"). Plaintiffs try to preempt this problem, contending that the District Court's "extensive discussion of remedy demonstrates that the court expected Interior to act on remand in some way." Plaintiffs Br. 23 (citing JA336-343 [Op. 56-63]). Their inability to pin cite any page or quote any language supporting their view of the order demonstrates its falsity.

Plaintiffs' radical view of the administrative-remand rule also wreaks havoc on agency litigation. For one, Plaintiffs' approach guts intervenors' rights. If it were accepted, *only* an agency could appeal a district court order that mentions a "remand" to the agency. But essentially every order does; this Court has said that *any* time an agency has "made an error of law, . . . the case must be remanded to the agency for further action consistent with the corrected legal standards." *Nebraska Dep't of Health & Human Servs. v. Department of Health & Human Servs.*, 435 F.3d 326, 331 (D.C. Cir. 2006) (citation omitted). So that makes almost every order adverse to an agency appealable only at the agency's option.

Yet intervenors join cases precisely so that they can raise arguments and pursue appeals when the government does not; the government does not represent the "more narrow and 'parochial' financial interest[s]" of private intervenors. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003) (citation omitted). Plaintiffs try to take through finality the appellate rights that parties obtain by intervening. *See* API Br. 18-19.

Moreover, Plaintiffs' theory makes appealability turn on magic words. Imagine the District Court had said it was just "vacating" the Record of Decision for Lease Sale 257, contrary to this Court's direction about remands. That would be appealable under Plaintiffs' theory. But that hypothetical order would be functionally identical to the vacate-and-remand order the District Court issued here. Under the hypothetical vacate-only order, Interior would have the same ability to determine whether to hold a sale for the acreage included in Lease Sale 257 as it does under the vacate-and-remand order. "[F]inality 'is to be given a practical rather than a technical construction,' " *Limnia, Inc v. U.S. Dep't of Energy*, 857 F.3d 379, 385 (D.C. Cir. 2017) (Kavanaugh, J.) (citation omitted), but Plaintiffs' approach rests on on technicalities.

In the end, the administrative-remand rule cannot trump the statutory principle that a "remand order 'that terminate[s] an action fall[s] within the core of Section 1291's requirement of finality.' " *American Great Lakes*, 962 F.3d at 515

(D.C. Cir. 2020) (citation omitted and brackets in *American Great Lakes*). The District Court's order here terminated Plaintiffs' action and it is final for appellate purposes.

### B. Plaintiffs take an unduly narrow view of this Court's now-or-never exception to the administrative-remand rule.

Even if the District Court's remand-and-vacatur order were subject to the administrative-remand rule, API and Louisiana may still appeal because if they cannot appeal now, they never can. *See* API Br. 19; Interior Br. 11-17. As Interior has explained, it could not complete a new NEPA analysis addressing the issues identified in the District Court's opinion by the end of the 2017-2022 Five Year Plan. Interior Br. 12-14. And because Interior could not complete the actions contemplated by the District Court's order as part of the 2017-2022 Five Year Plan and re-run Lease Sale 257, API and Louisiana would have no later opportunity to appeal the District Court's rulings. *See id.* at 16-17.[3]

---

[3] The Inflation Reduction Act directs that Interior conduct three lease sales—Lease Sales 258, 259, and 261—"[n]otwithstanding the expiration of the 2017-2022 leasing program." Pub. L. No. 117-169, § 50264(c)-(e), 136 Stat. 1818, 2060 (2022). Based on the Act's mandate that Interior issue leases to the high bidders in Lease Sale 257, none of those three planned lease sales will include the acreage from Lease Sale 257 that is at issue in this appeal. Moreover, Lease Sale 258 was conducted on December 30, 2022, *Lease Sale 258*, BOEM, https://www.boem.gov/oil-gas-energy/leasing/lease-sale-258 (last visited Jan. 11, 2023), and Lease Sale 259 will be conducted in March 2023, *Lease Sale 259*, BOEM, https://www.boem.gov/oil-gas-energy/leasing/lease-sale-259 (last visited Jan. 11, 2023), before this Court will decide this appeal, making it impossible-to-

Plaintiffs argue that an immediate appeal would be wasteful because Interior could, potentially, possibly, at some point include the Lease Sale 257 acreage at issue here in a different Five Year Plan and a different lease sale. *See* Plaintiffs Br. 18-20. But in *In re Long-Distance Telephone Service Federal Excise Tax Refund Litigation*, 751 F.3d 629, 633 (D.C. Cir. 2014), this Court held that a private party could appeal a remand order subject to the administrative-remand rule because the agency was "not planning" on addressing the issues identified in the district court's remand order, just as it is "speculative" and "far from certain" that Interior will address the issues identified in the District Court's remand order here, Interior Br. 14. And in *American Great Lakes*, the Court held that a private party could appeal a remand order where the District Court's failure to order remand proceedings meant that an immediate appeal "presents the only opportunity for the [appellants] to challenge the remand order," 962 F.3d at 515, just as the District Court's failure to require remand proceedings here means that an immediate appeal presents API and Louisiana's only opportunity to challenge the District Court's order.

Plaintiffs nonetheless contend that Interior's process of developing a new Five Year Plan and associated lease sales will "yield a final decision" that API and Louisiana "can challenge." Plaintiffs Br. 19. Plaintiffs highlight (at 18) that

---

nearly-impossible that these sales could include acreage that Interior has already executed leases for in accordance with the Act.

Interior has issued a draft Five Year Plan for 2023-2028, but the possibility that one of the sales under that Plan, if finalized, *could be* for Lease Sale 257 acreage does not guarantee that API and Louisiana will have an opportunity to appeal the District Court's decision. Moreover, Plaintiffs never say what form a final decision will take or when that decision will materialize. Particularly if Interior declines to re-auction the Lease Sale 257 acreage, there will be no final decision reflecting that; apparently, API and Louisiana should just wait five years and see if the acreage is ever scheduled for sale sometime during the next Five Year Plan. Or the one after that. Or after that. What Plaintiffs propose is not deferring review of the District Court's order but postponing it indefinitely. API and Louisiana can appeal now. *See* API Br. 19; Interior Br. 13-17.

## II. INTERIOR SATISFIED ITS NEPA OBLIGATIONS EVEN THOUGH IT DID NOT QUANTIFY FOREIGN EMISSIONS FROM LEASE SALE 257.

### A. NEPA does not require Interior to quantify global emissions from the no-action alternative in its lease sale EIS because emissions are not caused by any of the activities permitted at the lease-sale phase.

On the NEPA merits, the District Court erred in holding that leasing sufficiently "causes" greenhouse-gas emissions and, therefore, a quantification of those emissions must be included in Interior's NEPA analysis for Lease Sale 257. API Br. 27-30; Louisiana Br. 10-18. As this Court has explained, at OSCLA's lease-sale stage, judicial review is "chiefly . . . concerned about those hazards

associated with the limited preliminary activities permitted to the lessees during the lease sale phase." *Andrus*, 642 F.2d at 606.

Plaintiffs argue that *Andrus* did not allow Interior to ignore the oil-spill impacts at issue because the environmental impact statement there included a "worst-case" scenario for oil spills. Plaintiffs Br. 39. But *Andrus* did not affirm the fact-specific worst-case scenario included in the environmental impact statement. The Court held that "a major oil spill—the worst case—is far removed from categorical relevance at this stage." *Andrus*, 642 F.2d at 605 (footnote omitted). And Plaintiffs' position would come as a surprise to the courts in this Circuit and others that have relied on *Andrus* to hold that harms of all sorts—not just oil spills—that will not occur until later phases need not be considered at the lease-sale phase. Louisiana Br. 13-15.

The same is true of Plaintiffs' footnoted assertion that *Andrus* is a ticket good for one ride only because of its "1980 Alaska offshore" context. Plaintiffs Br. 39 n.14. Courts have relied on *Andrus* and its principles decades after 1980 and for lease sales outside of Alaska. *See, e.g.*, *Defenders of Wildlife v. Bureau of Ocean Energy Mgmt., Regul., & Enf't*, 871 F. Supp. 2d 1312, 1338-39 (S.D. Ala. 2012) (Gulf of Mexico sale conducted in 2010); *Wilderness Soc'y v. Salazar*, 603 F. Supp. 2d 52, 60 (D.D.C. 2009) (Alaska lease sale conducted in 1999). Even on its own terms, Plaintiffs' attempt to cabin *Andrus* misses the mark. Although

*Andrus* noted that an additional environmental analysis will be done during later stages, Interior must assess its NEPA compliance at every stage of the OCSLA process. *See* 40 C.F.R. § 1508.18(b)(4) (listing "[a]pproval of specific projects, such as construction or management activities located in a defined geographic area," as actions to which NEPA applies). If NEPA calls for further analysis at those phases, Interior will conduct it then, just as the Court noted Interior would in *Andrus*. And although *Andrus* cited now-superseded regulations regarding Interior's ability to suspend or cancel leases when necessary to protect the environment, it was merely to address the plaintiffs' policy arguments, not the lynchpin of the Court's NEPA analysis. *Andrus*, 642 F.2d at 606. In any case, *Andrus* also cited Interior's ability to block later exploration or development activities that would injure the environment, *id.*, and those regulations remain in force today, *see* API Br. 24.

Plaintiffs discuss *Native Village of Point Hope v. Jewell*, 740 F.3d 489, 504 (9th Cir. 2014), contending that the lease-sale stage is the only point at which cumulative impacts can be considered. Plaintiffs Br. 38. But *Point Hope* held that a consideration of oil spills was required at the lease-sale stage, putting it in direct conflict with *Andrus*, which held that consideration of oil spills was *not* required at the lease-sale stage. *Compare Point Hope*, 740 F.3d at 504, *with Andrus*, 642 F.2d at 605-606. For good reason: As *Andrus* explained, how much oil is produced at a

lease site "is a[] crucial factor[]" in Interior's analysis and is uncertain until the later exploration and development phases. 642 F.2d at 606. *Point Hope* does not help Plaintiffs.

Plaintiffs also lean on *Center for Biological Diversity v. Bernhardt*, 982 F.3d 723 (9th Cir. 2020) (*Liberty*) and *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Management*, 555 F. Supp. 3d 739 (D. Alaska 2021) (*Willow*). Plaintiffs Br. 40. But Plaintiffs concede that those opinions "address later stages of oil development." *Id.* The cases therefore prove API and Louisiana's point: The appropriate time, if any, to address the greenhouse-gas impacts that Plaintiffs complain about are during later phases, not the lease-sale phase. *See* API Br. 29-30; Louisiana Br. 17-18.

### B. Plaintiffs cannot explain away this Court's holding that OCSLA forbids consideration of global impacts of fossil fuels in deciding whether to forego a lease sale.

In *CBD*, this Court held that OCSLA "concerns the local environmental impact of leasing activities in the OCS and does not authorize—much less require—Interior to consider the environmental impact of post-exploration activities such as consuming fossil fuels on . . . the world at large." 563 F.3d at 485. That statement confirms that Interior cannot forego a lease sale because of the global impacts of fossil-fuel use under OCSLA and need not take those impacts

into account under NEPA when deciding whether to forego a sale; NEPA does not require agencies to analyze information they cannot act on. *See* API Br. 31-33.[4]

Plaintiffs dismiss *CBD*'s holding as dicta. Plaintiffs say that the question before the Court in *CBD* was whether OCSLA *required* consideration of global impacts, so whether OCSLA *permitted* consideration of global impacts was just loose language. Plaintiffs Br. 52-53. But the Court's holding that OCSLA precludes consideration of global environmental impacts was antecedent to its holding that OCSLA does not require consideration of those impacts; because consideration was forbidden, it logically followed that consideration cannot be required. *CBD*, 563 F.3d at 485. This Court recognizes that "a necessary antecedent" to one of its holdings is "necessary to the decision." *In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019). And the Court is "bound . . . 'not only [by] the result' of a prior case, 'but also [by] those portions of the opinion necessary to that result.' " *International Union, Sec., Police & Fire Pros. of Am. v.*

[4] Plaintiffs also allege in passing that API raised this point for the first time on appeal. Plaintiffs Br. 51. Not true. API argued below that Interior was forbidden by OCSLA from considering the foreign greenhouse-gas impacts that Plaintiffs raised. JA208-212 [ECF No. 43-1 at 26-30]. API's appellate arguments are not carbon copies of its District Court brief, but "[o]nce a federal claim is properly presented . . . parties are not limited to the precise arguments they made below." *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (citation omitted and brackets in *Lebron*).

*Faye*, 828 F.3d 969, 974 (D.C. Cir. 2016) (citation omitted and brackets in original).

Plaintiffs nonetheless try to re-litigate *CBD*, arguing that because OCSLA mentions the environment in various subsections and grants Interior broad authority to administer the statutorily mandated leasing program, it also authorizes Interior to consider global climate-change impacts. Plaintiffs Br. 53-54. But *CBD* explained that when OCSLA refers to protecting the environment, the statute is referring to "*local* environmental damage to the OCS." 563 F.3d at 485. As for Interior's discretion, *CBD* explained that the plaintiffs' "premise that, before Interior approves an offshore oil and gas Leasing Program, it must first consider whether it should extract oil and gas from the OCS at all" was "flawed" because "Congress has already decided that the OCS should be used to meet the nation's need for energy" *Id.* Interior's discretion not to hold a lease sale does not extend to decisions based on global greenhouse-gas impacts. *Id.*

Plaintiffs fall back further, contending that *CBD* was about OCSLA, not NEPA, and that OCSLA does not repeal any of Interior's NEPA obligations. Plaintiffs Br. 52. Under NEPA, however, an environmental impact statement need not analyze information that is irrelevant to an agency's decision whether to take a major federal action under the statute it administers. API Br. 31-33. If Interior cannot rely on global greenhouse-gas emissions to decline to hold a lease sale—

and it cannot—then failing to analyze those emissions in an environmental impact statement does not violate NEPA. *Id.* Applying that principle is not a repeal of NEPA; it is an application of NEPA.

Plaintiffs finally contend that the "OCSLA does not share the discretion-constraining characteristics that narrowed an agency's NEPA obligations in" *Department of Transportation v. Public Citizen*, 541 U.S. 752 (2004). Plaintiffs Br. 54. An agency's organic statute is—to use Plaintiffs' term—discretion-constraining when the agency "lacks the power to act on whatever information might be contained" in an environmental impact statement. *Public Citizen*, 541 U.S. at 768. And *CBD* confirms that is the case for Interior under OCSLA for global greenhouse-gas impacts, using almost those words. *CBD* holds that "Interior simply lacks the discretion to consider any global effects that oil and gas consumption may bring about." 563 F.3d at 485. Interior did not have to include the global greenhouse-gas impacts of Lease Sale 257 in its NEPA analysis because OCSLA forbid Interior from foregoing the sale based on those impacts; "the more expansive effect of oil and gas consumption is a matter for . . . Congress"—not Interior—"to consider when decisions are made regarding the role of oil and gas generally . . . in the Nation's overall energy policy." *Id.* (internal quotation marks omitted).

### C. In all events, Interior adequately considered the global greenhouse-gas emissions from Lease Sale 257, and Plaintiffs cannot explain away the Stockholm Environmental Institute working paper's unreliability.

Even if NEPA required Interior to consider global greenhouse-gas emissions in the no-action alternative, Interior did all that NEPA requires. API Br. 34-40; Louisiana Br. 18-21. Interior quantified emissions from Lease Sale 257 in the American market but explained that it lacked sufficiently reliable information to measure the substitution effects for Lease Sale 257 oil in foreign markets. *See* API Br. 34-35. And NEPA does not require Interior to quantify impacts that it cannot reliably quantify. *See id.*

Plaintiffs contend that Interior's environmental impact statement misled the public and decisionmakers by quantifying American emissions impacts while only qualitatively describing potential global emissions impacts, giving the perception that global emissions would decrease as a result of Lease Sale 257. Plaintiffs Br. 48-49. But Interior did not mislead anyone about anything; it was upfront about the limitations of its analysis and did not claim that Lease Sale 257 would reduce global emissions. *See* JA449 [AR14188]. Plaintiffs contend that a full picture of the emissions impact of Lease Sale 257 would include quantified global emissions in the no-action alternative but concede that quantification is required only if it can

be done reliably. *See* Plaintiffs Br. 48-49. So the global-emissions question collapses into the reliability of potential global-emissions calculations.

Plaintiffs try to side-step the reliability question entirely, attacking Interior for including its reasoning on global emissions in an addendum rather than the main environmental impact statement. *Id.* at 49-50. Plaintiffs contend that it is essential that the addendum's explanation appear in the body of the environmental impact statement, *id.*, but this Court has repeatedly held that including environmental-impact analysis in documents separate from or as an alternative to a formal environmental impact statement is harmless error at most. *See Nevada v. Department of Energy*, 457 F.3d 78, 90 (D.C. Cir. 2006); *Illinois Commerce Comm'n v. ICC*, 848 F.2d 1246, 1257 (D.C. Cir. 1988) (per curiam). It cannot sink Interior's otherwise-sufficient analysis.

When they address reliability, Plaintiffs primarily point to the Stockholm Environmental Institute working paper, claiming that it provides the necessary information to calculate the substitution effects between American oil and other fuel sources in foreign markets. *See* Plaintiffs Br. 42-43. But Plaintiffs have no answer for the working paper's many limitations, including its admission that "little information exists on the long-term elasticities of substitution between oil and . . . other transport fuels." JA648 [AR26936]; *see also* API Br. 37 (detailing other shortfalls). Plaintiffs instead, like the District Court, fault Interior for not

criticizing the working paper by name. *See* Plaintiffs Br. 50. But Interior made clear that *no* study provided "reliable and uniform global data." JA729 [AR29965]. That criticism is as true of the working paper as it is as the rest of the literature; Plaintiffs do not assert that the working paper provides reliable and uniform global data.

Plaintiffs also point to *Liberty* and *Willow*, which supposedly cited the working paper as a way to generate reliable estimates of foreign emissions. Plaintiffs Br. 50. But *Liberty*—which *Willow* adopted—acknowledged that "in some cases quantification may not be feasible" and that Interior can "explain why such an estimate is impossible" by complying with 40 C.F.R. § 1502.22. *Liberty*, 982 F.3d at 739 (citation omitted); *Willow*, 555 F. Supp. 3d at 764-765. And even the District Court agreed that Interior here "provided the four-part explanation required by" § 1502.22. JA315 [Op. 35]. That Interior's explanation of why it rejected the working paper was not as exhaustive as Plaintiffs would have liked is not grounds to hold that Interior's explanation violates NEPA. *See U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 652 (D.C. Cir. 2016) (per curiam) (court will " 'uphold a decision of less than ideal clarity' so long as 'the agency's path may reasonably be discerned' ") (citation omitted).

At the very least, Interior's explanation made clear that foreign emissions are not "yet so readily quantifiable that [the agency] acted unreasonably in

choosing not to quantify" them at this time. *Center for Sustainable Econ. v. Jewell*, 779 F.3d 588, 610-611 (D.C. Cir. 2015) (methodology advanced by petitioners was "not sufficiently well established" to render exclusion irrational); *see Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*, 684 F.3d 1242, 1250 (11th Cir. 2012) (rejecting argument that agency should have used particular methodology when it was not "a standard methodology in the industry" because "[i]t is not the duty of this court to determine the propriety of the methodology used"). Ultimately, "the final decision as to how much analysis is necessary in view of the available data must be the agency's, subject to judicial review only for obviously incorrect results or methodology." *Center for Sustainable Econ.*, 779 F.3d at 612 (citation omitted). Plaintiffs have identified no "obvious[]" error here.

Plaintiffs' purported final trump card is that reliable estimates must be possible because the draft environmental impact assessment for Lease Sale 258 included estimates for global emissions. Plaintiffs Br. 46-47. Not at all. Instead, the Lease Sale 258 draft, which Interior never formally adopted, is proof that it is possible to generate emissions estimates based on the working paper. That does not mean the numbers the Lease Sale 258 draft generated were *reliable*—the threshold for being required by NEPA. The draft does not undermine Interior's findings in Lease Sale 257. API Br. 39-40.

## III. PLAINTIFFS CANNOT REHABILITATE THE DISTRICT COURT'S MISUNDERSTANDING OF THE LEGAL STANDARDS FOR REMAND WITHOUT VACATUR.

The District Court abused its discretion in ordering vacatur in two respects. First, the District Court misunderstood this Court's decision in *Standing Rock Sioux Tribe v. United States Army Corps of Engineers*, 985 F.3d 1032 (D.C. Cir. 2021), thinking that remand without vacatur requires Interior to defend its decision to omit foreign greenhouse gases from its NEPA analysis as opposed to its decision to move forward with Lease Sale 257, and only then under a "conceivability" standard. API Br. 42-44. Second, the District Court created a new act-at-your-own-risk carve-out for otherwise disruptive consequences that would normally require remand without vacatur. *Id.* at 44-47. Plaintiffs cannot rehabilitate either aspect of the District Court's analysis.

### A. Plaintiffs cannot explain away the District Court's misinterpretation of *Standing Rock* and *Allied-Signal*.

The District Court believed that to warrant remand without vacatur, Interior and API and Louisiana had to show that Interior could "retroactively justify the decision it did make." JA339 [Op. 59]. The District Court drew this rule from *Standing Rock*, which held that when an agency skips an important procedural step, the vacatur-without-remand question is not whether the agency can justify its decision to authorize the federal action, but whether it can justify its decision to skip the procedural step. 985 F.3d at 1051-52. To be sure, *Standing Rock* referred

to having "substantial doubt" about whether the agency had correctly granted an easement, but that doubt was in light of the agency's complete failure to prepare an environmental impact statement. *Id.* at 1052-53. *Standing Rock* therefore has little to do with this case, as even the District Court agreed that Interior here did not skip any procedural steps. JA339 [Op. 59].

Plaintiffs try to recast the District Court's decision, saying that the court invoked *Standing Rock* only in measuring the seriousness of Interior's error not to quantify global greenhouse-gas impacts in the no-action alternative. Plaintiffs Br. 59. But even if that were right, the high bar set by the District Court is inconsistent with *Allied-Signal*. Under *Allied-Signal*, the appropriate question is whether it is "conceivable" that Interior "will be able to substantiate its decision on remand." 988 F.2d at 151. And it is certainly "conceivable" that Interior on remand can decide once more to approve Lease Sale 257, whether by further explaining why the Stockholm Environmental Institute working paper does not allow the agency to generate reliable global greenhouse-gas estimates or by employing the draft Lease Sale 258 methodology to global greenhouse-gas impacts and nonetheless deciding that the sale should proceed. After all, Interior generally recognizes that foregoing oil and gas development has fewer environmental impacts than development does, but has concluded that not developing OCS resources would "leave[] a void in planning for national energy needs," JA551 [AR15454], making it not just

conceivable, but likely, that Interior would find the additional emissions Plaintiffs hypothesize acceptable. Plaintiffs object to the "conceivable" standard (at 59), but that is literally the word that the Court used in *Allied-Signal* and afterwards. *E.g. Delta Air Lines, Inc. v. Export-Import Bank of the U.S.*, 718 F.3d 974, 978 (D.C. Cir. 2013) (per curiam).

Plaintiffs cannot have it both ways. They cannot argue (at 45-47) that the draft Lease Sale 258 analysis makes Interior's error obvious and then turn around and argue that the draft Lease Sale 258 analysis does not prove that Interior can readily remedy any analytical deficiency with the Lease Sale 257 impact statement.[5] The District Court abused its discretion in concluding that the first *Allied-Signal* factor weighed against remand without vacatur.

### B. Plaintiffs cannot justify the district court's novel *caveat emptor* rationale for ignoring industry's reliance interests and investments and OCSLA's mandated sealed-bid process.

The District Court also abused its discretion in discounting API members' and others' investment in Lease Sale 257 and OSCLA's statutorily mandated

[5] Plaintiffs make much of Interior persisting in its analysis following *Liberty*, hinting that Interior cannot do any better than it already has. But, for the reasons explained above, *Liberty* is not on point or Interior could have reasonably thought so. *Supra* pp. 18, 24. In any event, Interior was entitled to nonacquiesce in *Liberty*. *See Johnson v. U.S. R.R. Ret. Bd.*, 969 F.2d 1082, 1093 (D.C. Cir. 1992). Plaintiffs cite nothing holding that an agency's nonacquiescence is grounds for vacatur.

sealed-bidding process under a heretofore unknown "buyer beware" theory. API Br. 44-47. Echoing the District Court, Plaintiffs argue that API's members did not reasonably rely on the Record of Decision and its NEPA analysis in placing bids because they knew that it was subject to challenge before the Lease Sale 257 sale. Plaintiffs Br. 61-63. But Plaintiffs do not cite any case that endorses this theory, which contradicts this Court's cases teaching that vacatur is unwarranted when it would impose social and economic costs on regulated parties and unravel past transactions, both of which the District Court's order did. API Br. 44-45.

Plaintiffs make much of the fact that they requested expedited consideration in an attempt to obtain a decision before any reliance interests were disturbed. Plaintiffs Br. 62. But Plaintiffs' request, which was made before API moved to intervene, sought a decision before the leases were *issued*, not before the lease sale was *held*. *See* JA72-73 [ECF No. 11 at 5-6]; JA85-86 [ECF No. 22 at 2-3]. Plaintiffs failed to consider the harms from vacatur following the unsealing of sealed bids in proposing a briefing schedule that API did not participate in developing, but that does not mean that API assumed the risk of vacatur.

Nor is a litigant's reliance on an agency action unjustified just because the litigant is aware that the agency action is being challenged in court. An agency's action is entitled to a presumption of regularity, *see Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v.*

*Sanders*, 430 U.S. 99 (1977), meaning that parties can rely on in its legality until a court says otherwise. And bidders hardly had any choice when it came to Lease Sale 257; they could either sit out the bidding or bid while the suit was ongoing. There was no third option. Their reasonable decision to bid in the face of litigation uncertainty does not make the economic harm and operational disruption from vacatur any less. API Br. 44-47.

Plaintiffs also have little answer for the harm vacatur inflicts on OCSLA's mandatory sealed-bidding process. Congress has decided that sealed bids maximize revenue and are fairest to purchasers, but there is no mechanism to make bids secret again after they are revealed. *Id.* at 45-46. Plaintiffs say that vacatur is no different than an auction where Interior rejects all of the bids and then re-auctions the acreage in a later sale. Plaintiffs Br. 63-64. But Plaintiffs do not cite any evidence that such *en masse* rejections have ever happened, and we are not aware of any. Plaintiffs also observe that many of the leased blocks had only one bidder. *Id.* at 64. No matter. Now that bids have been revealed, participants can bid knowing what acreage other companies found promising enough to bid on and in what amount, distorting the playing field for any re-auction of the Lease Sale 257 acreage. *See Gulf Restoration Network v. Haaland*, 47 F.4th 795, 805 (D.C. Cir. 2022) (ordering remand without vacatur because, among other things, "any redo of the lease sales 'would be tainted by prior publication of [the] lessees'

proprietary valuation of the leases' following the original sales") (citation omitted and brackets in *Gulf Restoration Network*). The District Court abused its discretion in concluding the disruptive consequences of vacatur did not warrant remand without vacatur.

**CONCLUSION**

For the foregoing reasons and those in the opening brief, if Plaintiffs' case is not dismissed as moot, the District Court's judgment should be reversed.

Respectfully submitted,

/s/ Catherine E. Stetson
CATHERINE E. STETSON
SEAN MAROTTA
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
cate.stetson@hoganlovells.com

JONATHAN A. HUNTER
SARAH Y. DICHARRY
JONES WALKER LLP
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
(504) 582-8000
jhunter@joneswalker.com

*Counsel for American Petroleum Institute*

JEFF LANDRY
Attorney General
ELIZABETH B. MURRILL
Solicitor General
/s/ Joseph S. St. John
JOSEPH S. ST. JOHN
Deputy Solicitor General
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third Street
Baton Rouge, Louisiana 70804
(225) 326-6766
murrille@ag.louisiana.gov

TYLER R. GREEN
JEFFREY S. HETZEL
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, Utah 84101
(703) 243-9423

*Counsel for Louisiana*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of this Court's May 9, 2022 order because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,199 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

/s/ Catherine E. Stetson
Catherine E. Stetson

**CERTIFICATE OF SERVICE**

I certify that on January 25, 2023, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Catherine E. Stetson
Catherine E. Stetson